Cherubim J. SPINKS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 508–82L.

United States Claims Court.

March 22, 1984.

Nicholas Gilman, Washington, D.C., for plaintiff.

Mary Mitchelson, Washington, D.C., with whom was Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant.

## ORDER

NETTESHEIM, Judge.

Plaintiff has applied for attorneys' fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (Supp. V 1981) (the "EAJA"), and RUSCC 81(e).

## FACTS

The petition filed on September 30, 1982, sought, *inter alia,* a correction of military records, 10 U.S.C. §§ 1552–1554 (1982); an award of accrued pay and leave, 10 U.S.C. § 2771; death and gratuity benefits, 10 U.S.C. §§ 1475–1480; and dependency and indemnity compensation to plaintiff as a surviving spouse, 38 U.S.C. §§ 410–412 (1976 & Supp. V 1981). After having been transferred for duty from Alaska to Texas, plaintiff's husband disappeared, apparently after a one-car accident while enroute to Texas on April 5, 1970, and has not been seen or heard from since. Upon investigation, the Army placed Sgt. Spinks in the status of "Absent Without Leave" and on March 23, 1971, discharged him as a deserter. On September 15, 1982, plaintiff obtained a Virginia state court decree declaring Sgt. Spinks to be dead as of August 5, 1970. The action in this court followed.

Defendant did not answer the petition; rather, on November 29, 1982, the parties jointly moved for a stay to allow plaintiff to proceed before the Army Board for the Correction of Military Records (the "ABCMR"). This motion, signed by counsel for both parties, stated:

> In support of this motion, the parties state that plaintiff's claim involving a declaration of death of her husband and consequential survivor allowances and gratuities seems appropriate for disposition by the ABCMR. In the interest of judicial economy, the parties request that the administrative tribunal be given an opportunity to apply its expertise to this question before pursuing the claim in this Court.

The proceedings were duly stayed and, upon assignment of the case to this court, an order was entered upon expiration of the stay requiring defendant to respond to the petition. Thereafter, counsel for both parties on August 1, 1983, moved to stay proceedings for an additional 90 days "for purposes of settlement negotiations." This pleading represented that

> [o]n May 18, 1983, the ABCMR recommended that plaintiff's husband's military record be corrected by deletion of all references to absence without leave and desertion as they apply to his current military status, and by substituting therefor words to the effect that he died on April 5, 1970, while in an authorized leave status....

The stay was sought so that the Army could determine plaintiff's monetary entitlement pursuant to the record change.

Prior to the expiration of the stay subsequently entered, defendant moved on October 14, 1983, with the concurrence of plaintiff's counsel, for a further continuance to

allow "plaintiff to administratively pursue her entitlement pursuant to the May 18, 1979 decision of the Army Board for the Correction of Military Records." Upon expiration of this stay, the court restored the case to its active docket and ordered defendant to answer the petition. Before defendant's answer was due, plaintiff filed on January 11, 1984, her "Motion for Full and Final Summary Judgment as to Liability and Damages." Plaintiff stated: "[T]hose military entitlements prayed for in plaintiff's petition (complaint) and over which this Court has jurisdiction, have been authorized except for attorney's fees and costs. . . ." In her supporting brief, plaintiff stated, "We know of nothing more to which plaintiff could be found entitled directly or indirectly through the Army. Apparently plaintiff has now received authorization for all entitlements that this court could order paid." Defendant answered asserting as its affirmative defense that the controversy was moot. Accordingly, on January 17, 1984, an order entered dismissing the petition based on the representations in plaintiff's motion for summary judgment and defendant's suggestion of mootness and allowing plaintiff her costs in this court.

Plaintiff's EAJA application claimed fees and expenses for the proceedings in this court, before the ABCMR, and in the Virginia state court. The court ordered plaintiff to supplement her application with a further breakdown of attorney time and expenses attributable solely to the proceedings in this court. Plaintiff duly made a supplemental filing and defendant opposed the application, as supplemented.

## DISCUSSION

The guidelines prescribed by the Federal Circuit for reviewing applications under section 2412(d)(1)(A) of the EAJA have been set forth in detail recently in *Essex Electro Engineers, Inc. v. United States*, 4 Cl.Ct. 463 at 465–466 & n. 3 (1984) (NETTESHEIM, J.) (order denying EAJA application), and need not be reiterated. In brief, an award under section 2412(d)(1)(A) can enter in favor of a prevailing party if the Government's litigation position was unreasonable in view of all the facts and circumstances, and the Government's burden to disprove entitlement includes sustaining the reasonableness of its litigation position.

In *Morris Mechanical Enterprises, Inc. v. United States*, 728 F.2d 497 at 498 (Fed.Cir.1984), our court of appeals once again rejected the contention that the "position of the United States" under the EAJA encompasses agency action, as opposed to the Government's litigation position in court. Recovery of attorneys' fees and expenses incurred before the ABCMR and the Virginia state court, in which the United States was not involved, therefore has been foreclosed.

### 1. *Prevailing Party*

Defendant does not argue that plaintiff is not a prevailing party within the terms of section 2412(d)(1)(A), which provides:

[A] court shall award to a *prevailing party* other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action . . . .

(Emphasis added); *see Gould v. United States*, 3 Cl.Ct. 693, 695 (1983) (MILLER, J.) (order denying EAJA application). The legislative history of the EAJA, which defines the term "prevailing party," H.R. Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4990, does not specifically include as a prevailing party a litigant who obtains relief through the administrative process.

Plaintiff, by her own admission, received everything to which she was entitled through the administrative process. This application thus bears substantial similarity to that denied by Senior Judge White in *Lord v. United States*, 2 Cl.Ct. 749, 757 (1983), wherein plaintiff had received via the determination of the ABCMR concerning a disability status all benefits to which the court deemed him entitled. Plaintiff in

*Lord,* however, brought suit to challenge the result of the administrative process. Plaintiff here sued prior to the institution of administrative action and presumably would argue that the "lawsuit acted as a 'catalyst' in prompting the resolution of . . . [her] claims." *Gould v. United States,* 3 Cl.Ct. at 695 (quoting *Citizens Coalition for Block Grant Compliance, Inc. v. City of Euclid,* 537 F.Supp. 422, 425 (N.D.Ohio 1982), aff'd, 717 F.2d 964 (6th Cir.1983) [quoting *Parham v. Southeastern Bell Telephone Co.,* 433 F.2d 421, 429 (8th Cir.1970)]). If so, the record in this case reveals no basis to support a finding that the lawsuit served as a catalyst for the favorable result obtained from the ABCMR. Although plaintiff contends that she sought futilely for over 12 years to have the Army recognize both the fact of Sgt. Spinks' death and his death while on duty, it is as reasonable to conclude that the Virginia state court decree obtained on September 15, 1982, was as instrumental in achieving plaintiff's goal as the filing of her petition in this court on September 30, 1982.

Moreover, the relief secured by plaintiff did not result from any order of the court. *See Ceglia v. Schweiker,* 566 F.Supp. 118, 121–22 (E.D.N.Y.1983) (plaintiff who obtained remand to agency for *de novo* determination as ordered by court deemed prevailing party); *Gross v. Schweiker,* 563 F.Supp. 260, 262 (N.D.Ind.1983) (remand order obtained which was extent of relief court could render). Plaintiff relies on *Operating Engineers Local Union No. 3 v. Bohn,* 541 F.Supp. 486, 490 (D.Utah 1982), wherein plaintiff was deemed a prevailing party because it recovered in the lawsuit all substantive relief prayed for in complaint. The relief was achieved essentially by court settlement when defendant agreed to plaintiff's wage demands after a request for a temporary restraining order was denied and before a motion for preliminary injunction was heard. 541 F.Supp. at 489, 493.

The court concludes that plaintiff was not a prevailing party with respect to the litigation in this court.

## 2. Reasonableness of the Government's Litigation Position

Defending only on the ground that its litigation position was reasonable, defendant points to its action in obtaining by consent a reference of the matter to the ABCMR which granted plaintiff full relief, so that defendant never took a litigation position in this court other than to commend the matter to the board, to file a no-contest answer, and to advise that the matter was moot. Defendant's actions are distinguishable from *Hill v. United States,* 3 Cl.Ct. 428 (1983) (WHITE, S.J.), and *Clark v. United States,* 3 Cl.Ct. 194 (1983) (LYDON, J.) (orders denying EAJA applications), wherein defendant conceded liability and approved an administrative concession of liability, respectively. In neither case was an answer filed contesting liability. *See also Grace Baptist Church v. United States,* 1 Cl.Ct. 258 (1982) (LYDON, J.) (order denying EAJA application).

Defendant here did not concede liability; defendant merely referred the matter to the administrative process; and defendant filed an answer which, although asserting mootness, also contested liability other than as borne out by the ABCMR's decision and denied that the Army's earlier determination was arbitrary. Since the Department of Justice never settled this case, which was resolved administratively, the question becomes whether defendant should have settled the case and conceded liability before 13 months were consumed by the ABCMR in granting plaintiff relief. *See Bailey v. United States,* 721 F.2d 357 (Fed.Cir.1983) (22-month period between filing of petition and stipulated settlement *per se* unreasonable); *Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081 (2d Cir.1983) (seven-month delay in settling case unreasonable).

■ The court finds that defendant's litigation position was reasonable on several grounds. First, plaintiff agreed to refer the matter to the ABCMR. Plaintiff argues that the Government should have settled the court case by no later than June 1983 (nine months after the petition was filed), because on May 18, 1983, the ABCMR

made its finding that Sgt. Spinks' records should be changed. However, a concession on liability alone as of that date would have been meaningless, and the parties jointly moved for a stay on August 1, 1983, so that the Army could determine the amount of money plaintiff should receive. Plaintiff, by counsel, also concurred in a request for a further period within which the Army was to render its determination on entitlement.

Secondly, although the Virginia state court decree conclusively established Sgt. Spinks' death as of April 5, 1970, the date on which he disappeared, the surrounding circumstances did not suggest definitively that Sgt. Spinks died as a result of the accident. These included his excessive drinking in combination with taking prescribed drugs during the period before the accident, his backtracking on several occasions during the drive to Texas, and his appearing dazed or confused shortly before the accident. As the ABCMR concluded, "[D]espite the somewhat curious facts surrounding his disappearance after wrecking his car on 5 April 1970, it appears that the FSM [former service member] is dead." Given that Sgt. Spinks' long military service prior to the accident was without blemish and that no known associate or relative ever saw or heard from him subsequent to the accident, the "curious" circumstances of his disappearance were resolved in favor of a finding that he did not depart the service other than by death. The facts presented on plaintiff's behalf to the ABCMR, nonetheless, did not command but one result, and it was reasonable for the Government to have referred the matter to the board instead of conceding liability after the petition was filed.

■ Thirdly, and perhaps most importantly, the EAJA was enacted to penalize the Government for forcing private parties to litigate their claims. When the Government concedes liability without answer or seeks settlement as promptly as the circumstances reasonably permit, the defendant is

deemed to have acted reasonably. So, too, does the Government act reasonably when, with the consent of plaintiff prior to answering a complaint, defendant takes the matter out of the courts and places it in the administrative arena. Recovery should be denied for proceedings in this court instituted prior to administrative action, unless the administrative action was the product of judicial intervention or the favorable agency administrative action could not, or likely would not, have occurred without the filing of a lawsuit.

### CONCLUSION

Based on the foregoing, plaintiff's application for attorneys' fees and expenses is denied.*

IT IS SO ORDERED.

---

* Defendant also contested the number of hours and $75.00 hourly fee claimed by plaintiff's counsel. The court deems both the amount of time other than that before the board and Virginia court reasonable and, hence, compensable at the reasonable rate of $75.00 per hour.