**CITIZENS COALITION FOR BLOCK GRANT COMPLIANCE, et al., Plaintiffs,**

v.

**CITY OF EUCLID, et al., Defendants.**

**Civ. A. No. C78–1168.**

United States District Court, N. D. Ohio, E. D.

Feb. 19, 1982.

Edward G. Kramer, Vincent T. Lombardo, Avery S. Friedman, David L. Hoehnen, Cleveland, Ohio, for plaintiffs.

Patrick Rocco, Law Director, Euclid, Ohio, Patrick M. McLaughlin, Asst. U. S. Atty., Robert C. Maynard, Cleveland, Ohio, for defendants.

## ORDER

CONTIE, District Judge.

### INTRODUCTION

Before the Court is the motion of plaintiffs, the Citizens Coalition for Block Grant

Compliance and certain individuals, for an award of attorney's fees against the United States pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. For the reasons given below, the Court will deny the motion.

In 1977 the Citizens Coalition filed an administrative complaint with the department of Housing and Urban Development (HUD), and in 1978 the Citizens Coalition and certain individuals filed suit in this Court against the City and officers of Euclid and against HUD and its officers, alleging violation of 42 U.S.C. § 2000d, § 3604, § 3608, § 3617, § 5304(a), and Executive Order 11063. The Court dismissed the action on the grounds that plaintiffs lacked standing, but in January of 1981 the Court of Appeals reversed and remanded the case for reconsideration in light of *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). On remand, the Court found plaintiffs had standing to sue. The Court denied, however, plaintiffs' motion to certify the suit as a class action. The parties subsequently arrived at a settlement, and on November 25, 1981, the Court with the agreement of all parties dismissed the action.

The original complaint, seeking declaratory and equitable relief, alleged that the local and federal agencies and officials had failed to provide and implement a program of affirmative fair housing in Euclid as mandated by the Fair Housing Act of 1968 and Title VI of the Civil Rights Act of 1964. The plaintiffs further sought to compel the federal defendants to develop specific and quantifiable regulatory performance standards for affirmative fair housing.

The settlement agreement states that since the time the action was initiated in 1978, Euclid has expended considerable sums of money to promote fair housing. The settlement further states that the City asserts it is now in full compliance with all applicable statutory and administrative regulations, and that it will perform all obligations undertaken by written agreement with HUD. The City further agrees to set aside one seat on the Euclid Ministerial Association for a person selected by the Citizens Coalition. The City further agrees to pay the Coalition $1000 in partial reimbursement of its litigation costs.

Both the City and HUD agree to regularly make available to the Coalition certain information about Euclid's community development program, presumably so that the Coalition can continue to monitor the City's compliance with federal fair housing standards.

■ The City moves for fees pursuant to Section (d)(1)(A) of 28 U.S.C. § 2412, which reads:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

To recover fees under (d)(1)(A), the movant must first demonstrate that he is the prevailing party. If the movant succeeds in doing so, he is entitled to fees unless the government can show it was "substantially justified or that special circumstances make an award unjust." The movant has the burden of proof on the issue of who is the prevailing party; the government, on the issue of substantial justification.

## PREVAILING PARTY

■ For a plaintiff to be a prevailing party, he need only achieve some of the benefit he sought in bringing suit. *Northcross v. Bd. of Ed. of Memphis City Schools*, 611 F.2d 624 (6th Cir. 1979); *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978). A party may be a prevailing party without having obtained a favorable final judgment following a full trial on the merits. *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). A consent

decree or settlement may form the basis for an award. Indeed for a plaintiff to prevail, it is sufficient that his lawsuit acted as a "catalyst" in prompting defendants to take action to meet his claims. *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir. 1970).

The plaintiffs' ultimate goal was for the City of Euclid to come into compliance with federal fair housing standards. An intermediate goal was to have HUD terminate community development funds to Euclid because of the City's noncompliance. Plaintiffs wanted to bring pressure to bear on HUD in order that it would bring pressure to bear on Euclid.

The settlement agreement suggests that the plaintiffs largely achieved their ultimate goal, but it does not indicate that they ever achieved their intermediate goal vis à vis HUD. All that HUD agrees to in the settlement agreement is periodically to supply the Coalition with information, information that the Coalition is entitled to in any event under the Freedom of Information Act. HUD does not agree to draw up or to apply specific guidelines for the funding of the community development program in Euclid or elsewhere, as prayed for in the complaint. Neither does it promise to take any other specific actions, including the termination of funds should Euclid fall out of compliance with fair housing regulations. In sum, examination of the settlement agreement does not indicate that the plaintiffs have prevailed against HUD.

Plaintiffs argue that as a result of their suit HUD and Euclid both came voluntarily into compliance, and that as a consequence there were few if any further concessions to be made in a settlement agreement. In other words, the plaintiffs had gained the relief they sought before the agreement was entered into.

A court may look to the actual actions of the defendant in determining whether the plaintiff has gained the relief sought. *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978). This is more difficult to do, however, in a case like the present one where there has not been a full hearing on the merits and airing of the facts.

At oral hearing on the motion for attorney's fees, the plaintiffs introduced documents reflecting the correspondence between HUD and the City of Euclid regarding Euclid's community development program from 1975 through 1979. These documents indicate that HUD informed Euclid in 1975 that the City was not in compliance and warned the City that its funds might be terminated, and that HUD continued to disapprove of Euclid's actions and warn of termination through 1976, 1977, and 1978. The documents also indicate that on September 1, 1978, HUD froze funds to Euclid. On September 8, 1978, plaintiffs initiated the present action. In November of 1978, HUD froze the 1977 funds; in January of 1979, it recommended reduction of funding by the amount remaining in the 1977 grant and the entire 1978 grant.

From these records it is clear that HUD sought Euclid's compliance all along, although no doubt not as aggressively as the plaintiffs desired. Nonetheless, it is evident that HUD's goal and the plaintiffs' goal were the same. Further, it is not clear from the documents that the plaintiffs' action in bringing suit was what finally forced HUD to take a more aggressive stance. Rather, the documents suggest that HUD cut off funds shortly before suit was initiated.

In sum, considering that nothing in the settlement agreement indicates that the plaintiffs have obtained any of the relief they sought from HUD, that there was no trial on the merits at which the facts were fully explored and determined, that the documents admitted reveal that HUD's goal and plaintiffs' were the same throughout but do not unambiguously indicate that plaintiffs' action in bringing suit prompted HUD to take a more aggressive stance, the Court concludes that plaintiffs are not a prevailing party against HUD.

### SUBSTANTIAL JUSTIFICATION

In the alternative, even if the plaintiffs are the prevailing party against HUD, the

government has succeeded in showing that its actions were substantially justified.

The test of whether or not the government's position was substantially justified is essentially one of reasonableness. "Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made." H.R.Rep.No.96–1418, reprinted in 5 U.S.Code Cong. & Admin. News, 4984, 4989 (1980).

A question arises whether the "position" of the government which must be substantially justified is the original action of the government to which the plaintiff objects or the position of the government in defending or prosecuting the suit. The two positions are closely related (i.e., to defend an unreasonable action in court may itself be an unreasonable action), and the distinction therefore may often be academic.

Nonetheless, the language of both the statute and legislative history is unclear. The Judiciary Committee's statement of the purpose of the bill reveals that the legislation "rests on the premise that certain individuals, partnerships, corporations, and labor and other organizations may be deterred from seeking review of, or defending against, unreasonable government action because of the expense involved in securing the vindication of their rights." 5 U.S.Code Cong. & Admin.News, 4990 (1980). The congressional purpose to make fee-shifting "an instrument for curbing excessive regulation and the unreasonable exercise of Government authority" (Id. at 4991) suggests that congressional concern was with the reasonableness of the underlying action.

On the other hand, the use of the word "case" in the context of substantial justification suggests that the action to be tested for reasonableness is the government's action in pursuing or defending the suit once initiated.

█ The United States District Court for the District of Maryland has interpreted the government's "position" as its litigation position. *Alspach v. District Director of Internal Revenue*, 527 F.Supp. 225 (1981). This Court agrees only to the extent that

when as here there has been no trial on the merits and no admission of fault in a consent decree or otherwise, the court must examine the reasonableness of the government's litigation position; for it generally has insufficient information to determine the reasonableness of the government's underlying action.

In the present action, HUD defended the suit by moving to dismiss on the grounds that plaintiffs lacked standing. That the Court granted the motion is sufficient to establish that the government's action had a reasonable basis in law and fact. Upon remand for reconsideration in light of an intervening Supreme Court decision and upon this Court's subsequent finding that plaintiffs did have standing, HUD entered into a settlement agreement with the plaintiffs. The Court consequently finds that the government was substantially justified in its litigation position.

In the alternative, even if the Court were to examine the reasonableness of HUD's underlying position on the basis of the documents introduced into evidence at the hearing on the motion for attorney's fees, the Court finds that HUD's determinations of noncompliance, its warnings to the City of Euclid, and requests for changes in the City's programs establish that HUD's actions were substantially justified. This of course is not tantamount to a finding that HUD was fulfilling its statutory obligations in the funding of the community development program in the City of Euclid.

In sum, the Court finds that the government was substantially justified in its position and that consequently the plaintiffs are not entitled to fees under 28 U.S.C. § 2412(d)(1)(A).

## CONCLUSION

█ Accordingly, for the reasons stated above, the Court hereby denies plaintiffs' motion for attorney's fees.

IT IS SO ORDERED.