CITIZENS COALITION FOR BLOCK GRANT COMPLIANCE, INC., et al., Plaintiffs-Appellants,

v.

CITY OF EUCLID, et al., Defendants,

United States Department of Housing and Urban Development, et al., Defendants-Appellees.

No. 82–3290.

United States Court of Appeals, Sixth Circuit.

Argued June 16, 1983.

Decided Sept. 20, 1983.

Edward G. Kramer (argued), Vincent T. Lombardo, Cleveland, Ohio, for plaintiffs-appellants.

Henry B. Fischer, Asst. Director of Law, Euclid, Ohio, for amicus curiae, City of Euclid.

Patrick M. McLaughlin, Asst. U.S. Atty. (argued), Robert C. Maynard, Cleveland, Ohio, for defendants-appellees.

Before MARTIN, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

The Citizens Coalition for Block Grant Compliance, Inc., plaintiff in a proceeding against the City of Euclid and the United States Department of Housing and Urban Development, appeals denial of its motion for attorney's fees. *See Citizens Coalition for Block Grant Compliance, et al. v. City of Euclid, et al.,* 537 F.Supp. 422 (N.D.Ohio 1982). We affirm.

The Coalition is a non-profit civic corporation which monitors disbursement of Community Development Block Grant funds in Cuyahoga County, Ohio (Cleveland, and surrounding municipalities) to ensure recipients provide adequate and affirmative fair housing programs. HUD administers the Block Grant program under Title I of the Housing and Community Development Act of 1974, 42 U.S.C. §§ 5301 *et seq.* The City of Euclid is a recipient of Block Grant funds.

On September 8, 1978, the Coalition, together with two white residents of Euclid and two black non-residents, filed suit against HUD, the City, and others because of the City's alleged failure to comply with, and HUD's failure to ensure compliance with, its fair housing obligations under the Housing and Community Development Act, *supra,* and other specific civil rights laws. The plaintiffs, who sought class certification, requested declaratory and equitable relief. Generally they sought to temporarily restrain and permanently enjoin further disbursement of Block Grant funds to the City pending the City's submission of an affirmative action fair housing program which complied with the applicable laws and regulations.

Five months after the suit was filed, it was dismissed for lack of standing on defendant's motion for summary judgment. That decision was vacated by order of this court and the case remanded for reconsideration in light of *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), a decision delivered subsequent to the lower court's dismissal of this suit. On reconsideration, the court found plaintiffs had standing but denied their request for certification as a class. Before trial on the merits, however, the suit was settled. That fact was reflected in a November 25, 1981 order dismissing the action with prejudice and directing that each party bear its own costs. The Coalition thereafter filed a motion for attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. The denial of that motion is the subject of this appeal.

■ The Equal Access to Justice Act[1] authorizes payment of attorney's fees to the prevailing party, other than the government, in a suit by or against the United States, unless the court finds that the position of the government was substantially justified. It is clear from interpretations of the "prevailing party" standard as it is used in other fee-shifting statutes[2] that to qualify a party need not be a victor in a lawsuit that leads to a judgment on the merits. *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624, 633 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). "Parties may be considered to have prevailed when they have vindicated important rights through a consent judgment or without formally obtaining relief." *Id.* at 633. *Accord Nadeau v. Helgemoe,* 581 F.2d 275, 279 (1st Cir.1978). The fact that a party prevails through a favorable settlement rather than through litigation does not "weaken" its claim to fees. *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574–2575, 65 L.Ed.2d 653 (1980); *Johnston v. Jago,* 691 F.2d 283, 285 (6th Cir.1982). It is enough that the lawsuit acted as a "catalyst" in prompting defendants to take the desired action. *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir.1970).

Although it is certain that a party to settled litigation may be a "prevailing party" for fee-shifting purposes, determining when such a party is in fact a "prevailing party" is not a simple inquiry. In *Johnston,* this circuit endorsed a two-part standard first propounded by the First Circuit in *Nadeau* for determining whether a party to settled litigation "prevailed." Under the *Nadeau* test, the court must first ask whether, as a matter of fact, the plaintiff's lawsuit was a necessary and important factor in achieving the relief desired. *Id.* 581 F.2d at 281; *Johnston,* 691 F.2d at 286. If it answers this first query affirmatively, the court must then determine whether the relief obtained resulted from a gratuitous act on the defendant's part or whether defendant's actions were mandated by law. When the plaintiff's case is "frivolous, unreasonable or groundless," *id.,* any concessions the defendant may have made by way of settlement are considered gratuitous and attorney's fees are not awarded.

■ The Coalition's claim for fees falls on the first prong of the test. The district

**1.** 28 U.S.C. § 2412(d)(1)(A) provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

**2.** The legislative history of section 2412 indicates that Congress intended that "prevailing party" as used in the Equal Access to Justice Act be read consistently with its use in other fee-shifting statutes. H.Rep. No. 96–1418, at 11, U.S.Code Cong. & Admin.News 1978, p. 4953; Sen.Rep. No. 96–253. *See Northcross v. Memphis Bd. of Education,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (similar attorney's fee provisions should be interpreted *pari passu*); *Hensley v. Eckerhart,* —— U.S. ——, ——, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983); *Ruckelshaus v. Sierra Club,* —— U.S. ——, ——, 103 S.Ct. 3274, 3280, 77 L.Ed.2d 938 (1983).

court found insufficient evidence of a causal connection between the suit and HUD's actions to support a determination that the Coalition had prevailed. The court stated:

> From these records it is clear that HUD sought Euclid's compliance all along, although no doubt not as aggressively as the plaintiffs desired. Nonetheless, it is evident that HUD's goal and the plaintiff's goal were the same. Further, it is not clear from the documents that the plaintiffs' action in bringing suit was what finally forced HUD to take a more aggressive stance. Rather, the documents suggest that HUD cut off funds shortly before suit was initiated.
>
> In sum, considering that nothing in the settlement agreement indicates that the plaintiffs have obtained any of the relief they sought from HUD, that there was no trial on the merits at which the facts were fully explored and determined, that the documents admitted reveal that HUD's goal and plaintiffs' were the same throughout but do not unambiguously indicate that plaintiffs' action in bringing suit prompted HUD to take a more aggressive stance, the Court concludes that plaintiffs are not a prevailing party against HUD.

*Citizens Coalition,* 537 F.Supp. at 425. Our review of the record convinces us that that determination is not clearly erroneous. Fed.R.Civ.P. 52(a).

The Coalition argues here that both the chronological sequence of events and the settlement agreement prove the catalytic effect of its efforts in compelling HUD to force Euclid's compliance. We do not agree. While chronological evidence is certainly a consideration in cases of this sort, *see Nadeau,* 581 F.2d at 281, it is not conclusive. In this case, HUD's efforts to compel compliance through warnings and demands of assurances predate the Coalition's active involvement. The record strongly suggests HUD's predisposition to achieve compliance despite the Coalition's activities. That the Department may have moved more slowly than the Coalition would have wished is beside the point. Whether the lawsuit hastened the process is, at best, uncertain, and certainly not so obvious as to render the decision of the district court clearly erroneous.

The Coalition also points to the Settlement Agreement as proof of causation. By its terms, the Agreement provides for nothing more than the Coalition's access to certain HUD files and other documents on a periodic basis. The Coalition singles out one paragraph, paragraph 5, as evidence of the causal connection between its efforts and HUD's actions. Paragraph 5 provides: "WHEREAS, since the aforesaid complaints were filed, substantial sums of money have been expended in the City of Euclid to promote fair housing...." "Since", however, is generally a word of temporal, rather than causal significance. The entire paragraph could plausibly be read as nothing more than an acknowledgement that, for whatever reasons, the motivation for originally filing the lawsuit no longer existed. From this one paragraph, therefore, it is not possible to conclude by a preponderance of the evidence that one party's actions compelled those of the other.

We note that the settlement agreement in this case is not like the consent decree in *Maher v. Gagne.* In that case, the decree itself provided for both the increased expense allowances sought by the plaintiffs under the Aid for Dependent Children program as well as the opportunity for AFDC beneficiaries to prove actual expenses exceeded the statutory standard allowance, both concessions central to plaintiffs' claims.

We conclude, therefore, that Judge Contie did not err in holding that there was insufficient evidence of a causal connection between the actions of the Coalition and those of HUD to find the Coalition a "prevailing party" for purposes of the Equal Access to Justice Act. Because we find that the Coalition did not prevail, it is unnecessary for us to consider whether the government's position was "substantially justified."

The decision of the district court denying attorney's fees is affirmed.